IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PAUL DEANTHONY BATTLE, #07700090997                                    PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 3:24-cv-168-KHJ-MTP

TYREE JONES, JOHN DOES, NELSON
TYLER, JOHN SCOTT, TERRELL THORNTON,
JAMES DOTSON, and BRITTANY MILTON                                       DEFENDANTS

TYREE JONES, NELSON TYLER, JOHN SCOTT,
AND BRITTANY MILTON'S MEMORANDUM OF AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Tyree Jones, Nelson Tyler, John Scott, and Brittany Milton (hereafter collectively "Movants"), by and through counsel, and pursuant to Rule 56 of Federal Rules of Civil Procedure, submit their Memorandum of Authorities in Support of Motion for Summary Judgment as follows:

INTRODUCTION

This matter arises out of Plaintiff's confinement in the custody of Hinds County. *See Complaint* [1], ¶ 9. Plaintiff sued pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights in numerous ways, including excessive force, denial of medical care, unconstitutional conditions of confinement (sanitation/hygiene; clothing), placement in a segregation cell, bystander liability, and deprivation of property. *Id*. at ¶¶ 9-10; Ex. A, *Omnibus Hearing Transcript, passim; see also Resp.* [12] and *Resp.* [14].

Plaintiff's claims fail both under the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997 and under Section 1983. The questions presently before the Court are whether the PLRA bars Plaintiff's claims, and/or Plaintiff's allegations fail to state a claim

or to generate and/or sustain a genuine issue of material fact that may proceed to trial, in which case his claims fail both under the PLRA and under Section 1983 and must be dismissed.

## STATEMENT OF FACTS

**Initial Incident**. Plaintiff's Complaint [1] alleges that while incarcerated in the Raymond Detention Center (hereinafter, "Jail") on October 24, [2023], he fled his housing unit, C-2. When he got to C-1 unit, Defendant Scott Tased him more than once. Afterward, Plaintiff was "dazed and discombobulated." He was placed in lockdown in C-4. *Complaint* [1] p. 4 ¶ 9. During the following days, his commissary items were stolen or not returned. *Id*. p. 5. Plaintiff testified[1] that he was on lockdown for 24 hours for approximately 15 days straight and was not given medical attention for the "burn marks" on his chest from the Taser. Ex. A, *Omnibus Hearing Transcript* 14:22-15:3. After another 15 days on lockdown, Plaintiff went back to general population. *Id*.

An Incident Report written by Defendant Scott describes his interactions with Plaintiff that led to Plaintiff being Tased. Ex. B, *Incident Report*, (CLT-(BATTLE)-000200)). Defendant Scott was in C-3 unit when he was advised that Plaintiff had exited C-2 unit where he was assigned and gone to C-1 unit. *Id*. Defendant Scott intercepted Plaintiff in the C-1 rec yard and gave him several commands to leave C-1 unit and put on handcuffs. *Id*. Plaintiff refused to comply and walked away from Defendant Scott. *Id*. Scott observed Plaintiff "continued to ignore me while appearing to be high on something." *Id*. Then

---

[1] On June 26, 2025, Plaintiff was provided an Omnibus Hearing. Plaintiff was sworn in and while under oath provided testimony to clarify the claims of this action. At the Omnibus Hearing, Plaintiff described the facts leading to his claims and clarified the reasons why he sued various defendants.

Plaintiff stepped toward Scott aggressively and Scott deployed his taser. Plaintiff was then cuffed, escorted to medical, cleared, and then placed in a C-4 lockdown cell. *Id*.

**Second Incident.** After Plaintiff was returned to the general population, Defendant Tyler searched Plaintiff's cell and found a contraband cellphone. Plaintiff alleges he was sent to lockdown again and his commissary items and belongings were taken. He received no sleeping mat the first day in segregation and had to sleep on the floor in the cell that night. *Id*. 15:8-16:24. Defendant Scott brought Plaintiff a sleeping mat the following day, but Plaintiff's property was not returned. Plaintiff asserts he was on lockdown for about a week. Ex. A, *Omnibus Hearing Transcript* 17:3-19.

**Plaintiff's Allegations.** The Court examined Plaintiff regarding his reason for suing Defendant Tyree Jones. Plaintiff said it was "because he's the head of the department of all the officers" and "I feel like he's responsible because of the officers that's working up there." *Id*. 19:4-10. Defendant Jones was not present during any of the events Plaintiff complains about and Plaintiff has not spoken with Jones about any of his complaints. Plaintiff agreed he was suing Jones because he was in charge and should be responsible. *Id*. 19:11-25.

Plaintiff sued Defendant Nelson because of his missing commissary items. *Id*. 20:15-21. Plaintiff saw Defendant Tyler put his commissary and other items in a bag, and Plaintiff thought they would be taken to lockdown, but Defendant Nelson did not take the items to lockdown. *Id*. 20:13-24. Plaintiff also sued Nelson because Nelson was the

person who told Terrell Thornton[2] to take Plaintiff to lockdown after a phone was found in his cell. *Id*. 21:7-25 Plaintiff does not know what Defendant Nelson did with the property once it was bagged up or who was responsible for the property after Defendant Nelson. *Id*. 34:19-24.

Plaintiff testified that he sued Defendant Scott because Scott Tased him, which he considered excessive force. *Id*. 22:13-23:8. Plaintiff could not remember if he asked Defendant Scott for medical attention. *Id*. 24:3-6. Plaintiff testified that the burns from the Taser healed fully without medical attention, but that he had been upset. *Id*. 24:7-25:11. Plaintiff also said that Defendant Scott denied him a shower. *Response* [14] p. 2.

Plaintiff testified that Defendant Milton interacted with him when he was initially on lockdown. He alleges he told Milton what happened, but he received no help. He thought that she would help get him out of lockdown. *Id*. 26:22-28:7. He told her he had burn marks on his chest. *Response* [14] p. 1.

**Grievance Procedure.** Plaintiff never made a written request for medical treatment. *Id*. 37:2-5. Plaintiff's Complaint states that he was "not allowed to present a grievance" at the Hinds County Raymond Detention Center because he was in solitary confinement and could not keep his paperwork or property. *Complaint* [1] p. 3. Plaintiff further claimed that "there is no grievance procedure at that jail". *Id*. p. 4. This is inaccurate and evidenced by Plaintiff's own signature on grievance procedure documents. Ex. C., *Booking Documents*, (CLT-(BATTLE)-000113, 000114)). These

---

[2] Defendant Thornton was never properly identified nor served by Plaintiff in this matter.

documents explain the grievance process that was in effect at the Detention Center when Plaintiff was housed there and demonstrates that Plaintiff received and acknowledged information about the process during his recent incarceration.

## LEGAL STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The United States Supreme Court has explained that the language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact...." *Harris v. Mississippi Valley State Univ.*, 899 F. Supp. 1561 (N.D. Miss. 1995) (citing *Celotex,* 477 U.S. at 324).

Once a properly supported Motion for Summary Judgment is presented, the nonmoving party must rebut it with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). The non-moving party cannot rely on mere denial of material facts or

unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda; rather, the non-movant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg 7 Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

## ARGUMENT

Plaintiff's claims fail both under the Prison Litigation Reform Act ("PLRA"), which governs all prisoner suits, and under 42 U.S.C. Section 1983. All of Plaintiff's complaints against each Movant-Defendant must be dismissed.

## I.    PLRA

Plaintiff's claims fall under the auspices of the PLRA. Congress enacted the Prison Litigation Reform Act, 42 U.S.C. § 1997, in "an effort to address the large number of prisoner complaints filed in Federal court." *Jones v. Beck*, 11 549 U.S. 199, 202 (2007).  The PLRA applies to "any suit challenging prison conditions, not just for suits under [42 U.S.C.] § 1983." *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 2383, 165 L. Ed. 2d 368 (2006). Thus, "[t]he PLRA governs all of [Plaintiff's] claims." *Smith v. Bounds*, No. 3:12-cv-173-LRA, 2013 WL 4773935, at *5 (S.D. Miss. Sept. 4, 2013). This Court must "'dismiss [Plaintiff's] case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief can be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.'" 28 U.S.C. § 1915(e)(2)(B).

A.    **PLRA Physical Injury Requirement**

Plaintiff's claims are barred by the PLRA's physical injury requirement.  Section 1997e(e) of the PLRA provides that "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). Furthermore, the Fifth Circuit has explained that the physical injury required by § 1997e(e) "must be more than *de [minimis]* but need not be significant." *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir. 1999) (correction omitted) (quoting *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). Notably, the physical injury requirement applies regardless of the type of claim sought, as it is the nature of relief sought that dictates its application. *Geiger v. Jowers,* 404 F.39d 371, 375 (5th Cir. 2005).

Although the Fifth Circuit has not issued any single opinion creating a "bright line" rule as to what constitutes a sufficient "physical injury," its prior decisions are instructive. For example, in *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997), the Court found that a sore bruised ear which lasted for approximately three days is nothing more than a *de minimis* injury.

In this matter, Plaintiff sued numerous individual Defendants for complaints that do not involve any colorable allegation of physical injury whatsoever:

- Plaintiff sued Defendant Tyler because Tyler searched Plaintiff's cell and found a contraband cellphone, resulting in Plaintiff being sent to lockdown, losing track of his belongings, and having no sleeping mat for one night. Ex. A, *Omnibus Hearing Transcript* 15:8-16:24.

- Plaintiff sued Defendant Nelson because he did not take Plaintiff's missing commissary and personal items to lockdown, and because Nelson told Thornton to take Plaintiff to lockdown after contraband was found in Plaintiff's cell. *Id*. 20:13-24; 21:7-25.

- Plaintiff sued Defendant Milton because she interacted with him when he was initially on lockdown, and when he told her what happened, he received no help. He thought that she would help get him out of lockdown immediately. *Id*. 26:22-28:7.

- Plaintiff sued Defendant Jones, who was not present during any of the events, because he was in charge and should be responsible. *Id*. 19:11-25.

None of the above involve a touching or physical injury to Plaintiff, nor are they the types of claims that constitute a physical injury under the PLRA. *See Murshid v. Sollie*, No. 3:19-CV-935-FKB, 2022 WL 4962609, at *5 (S.D. Miss. Sept. 12, 2022) (finding the following injuries not actionable under the PLRA: "placement on suicide watch, being called a terrorist, the threat of a taser, not receiving a mop when requested, and unsanitary food and beverage practices") (*citing Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003); *Guillory v. Hodge*, Civil Action No. 2:14-cv-00157-MTP, 2016 WL 1175282, at *3 (S.D. Miss. Mar. 23, 2016)). All of these claims must be dismissed for lack of a physical injury.

Nor does the Taser incident constitute sufficient injury to survive a dispositive motion under the PLRA. Plaintiff sued Defendant Scott because Scott Tased him while he was noncompliant after leaving his cell unit without authorization. Plaintiff alleges

excessive force, *id.* 22:13-23:8, but Plaintiff could not remember if he asked Defendant Scott for medical attention. *Id.* 24:3-6. Jail records reflect that Defendant Scott *did* have Plaintiff medically cleared per protocol after he was Tased. Ex. B, *Incident Report* (CLT-(BATTLE)-000200)). Plaintiff testified that he had "burn marks" on his chest from the Taser. Ex. A, *Omnibus Hearing Transcript* 14:22-15:3. Elsewhere he called the spots "pink flesh." *Response* [14] ¶2. Plaintiff's spots fully healed without medical treatment. *Omnibus Hearing Transcript* 24:7-25:11.

The type of marks typically left by Tasers are *de minimis* injuries under the PLRA. For example, in another prisoner case considering whether taser marks were sufficient injuries to fall under the injury requirements of the PLRA, one court noted that where a prisoner/plaintiff alleged he had two scars from the taser, those did not constitute a serious injury, "any more so than the small abrasions referenced in the medical records." *Martin v. Wilkes*, No. CV 117-127, 2019 WL 3323333, at *8 (S.D. Ga. July 24, 2019), *report and recommendation adopted*, No. CV 117-127, 2019 WL 4127807 (S.D. Ga. Aug. 29, 2019) (citing *Ledlow v. Givens*, 500 F. App'x 910, 913-14 (11th Cir. 2012) (finding only *de minimis* injury where prisoner suffered bloody nose and small laceration resulting in no lasting injury); *see also Buckley v. Haddock*, 292 F. App'x 791, 795–96 (11th Cir. 2008) (holding sixteen small taser burns incurred while securing plaintiff, causing "some scarring and keloid growth," not sufficient to state a constitutional claim for excessive force). In this case, the pink marks on Plaintiff's chest that fully healed without medical attention are not constitutional injuries are therefore Plaintiff's claims regarding the Taser must also be dismissed due to lack of physical injury.

B.     **PRLA Exhaustion of Grievance Procedure**

The United States Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). The United States Supreme Court has interpreted § 1997e(a) as requiring exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S. Ct. 1819, 1825 n. 6, 149 L. Ed. 2d 958 (2001). *See Dillon v. Rogers*, 596 F.3d 260, 272 n. 3 (5th Cir. 2010); *see also Carbe v. Lappin*, 492 F.3d 325, 327–28 (5th Cir.2007) ("[A] court can dismiss a case…for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust.").

Further, under § 1997e(a), a prisoner must exhaust such administrative remedies as are available, whatever they may be. *See Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). If a prisoner has not exhausted all available administrative remedies, dismissal is appropriate. *Id*. at 359. As such, Plaintiff's failure to exhaust his administrative remedies prior to filing this suit is fatal to his claims.

In this case, Hinds County had a grievance program in place during the course of Plaintiff's confinement, and Plaintiff executed acknowledgement of receipt of the program's directives. *See* Ex. C, *Booking Documents*, (CLT-(BATTLE)-000113, 000114)). Plaintiff was aware of the grievance process and signed an acknowledgement of the same.

*Id*. Nevertheless, Plaintiff did not exhaust the County's grievance process regarding the allegations he makes against Movants. *See* Ex. D, *Inmate Jail Record*, generally, (CLT-(BATTLE)-000099 through 000189)). Plaintiff alleges he did not file any grievances because he was not allowed to do so due to his placement in segregation. *See Complaint* [1] ¶ 7 and 8. However, while Plaintiff was not prohibited from filing a grievance while in solitary confinement, even were that true, he was only there for fifteen days. Even under this incorrect theory, Plaintiff had time to submit a grievance once he was released from solitary confinement. He failed to do so.  As evidenced by the testimony of Lt. Jamikia Scott. *See* Ex. E, *Affidavit of J. Scott.* Plaintiff failed to submit any grievances during his confinement in Hinds County.

Plaintiff was fully aware of the grievance process, knew it existed, but failed to exhaust his remedies regarding the claims of the instant action. For this reason, the PLRA requires Plaintiff's Complaint to be dismissed as to Movants.

## II.    Section 1983

### A.    Lack of Personal Participation as to Sheriff Jones

As the Court is well aware, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Borden v. Jackson County*, 2012 U.S. Dist. LEXIS 134400 (S.D. Miss. Aug. 24, 2012) (holding that a plaintiff must demonstrate personal participation in alleged unconstitutional conduct). Moreover, "supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability." *Burris v. Davis*, 642 F.Supp.2d 573, 582 (S.D. Miss. 2009) (citations omitted). Rather, supervisory prison officials may be held

liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.*

Section 1983 does not "create supervisory or *respondeat superior* liability." *Clay v. Epps*, No. CIVA 206CV56-KS-MTP, 2006 WL 2669470, at *3 (S.D. Miss. Sept. 18, 2006) (citing *Oliver,* 276 F.3d 736, 742 & n. 6.). When Plaintiff was asked why he had sued Sheriff Jones, he said it was "because he's the head of the department of all the officers" and "I feel like he's responsible because of the officers that's working up there." Ex. A, *Omnibus Hearing Transcript* 19:4-10. Defendant Jones was not present during any of the events Plaintiff complains about and Plaintiff has not spoken with Jones about any of his complaints. Plaintiff agreed he was suing Jones because he was in charge and should be responsible. *Id.* 19:11-25.

None of Plaintiff's allegations regarding his experiences at the Jail involve actions taken by Sheriff Jones personally. *Id.* Plaintiff has provided no evidence Sheriff Jones played any direct role, personally or otherwise, in Plaintiff's claims. In fact, his own testimony reveals he is only suing the Sheriff because he is the Sheriff, not because he was personally involved. *Omnibus Hearing Transcript* 19:4-10. Because the Sheriff was not personally involved in any of the alleged incidents about which Plaintiff complains, the claims against Sheriff Jones must be dismissed. *Murshid v. Sollie*, No. 3:19-CV-935-FKB, 2022 WL 4962609, at *4 (S.D. Miss. Sept. 12, 2022). Alternatively, Sheriff Jones is entitled to qualified immunity for any individual capacity claims, as addressed below.

**B.**    **Qualified Immunity as to Defendants Jones, Tyler, Scott and Milton**

Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). The purpose of qualified immunity is to protect public officials from the "burdens of fighting lawsuits which arise from the good-faith performance of their duties." *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997). Thus, qualified immunity "is not just immunity from judgment, but rather, is immunity from all aspects of suit." *Jacques v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994). Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The purpose of qualified immunity is to protect public officials from the "burdens of fighting lawsuits which arise from the good-faith performance of their duties." *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997). Thus, qualified immunity "is an *immunity from suit,* and extends beyond just a defense to liability to include all aspects of civil litigation." *Jacques v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

In assessing a claim of qualified immunity, courts should apply a two-part analysis. The threshold question is "whether Plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If "no constitutional right

would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001). However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

For each of the claims asserted by Plaintiff in this case, the facts fail to state a constitutional injury. For that reason, each of the Movant-Defendants retains qualified immunity, and the claims against each must be dismissed.

## 1.    Conditions of Confinement

As addressed *supra*, Plaintiff did not suffer any injury, particularly any injury related to his confinement complaints pertaining to cleanliness, hygiene, clothing, or a single evening without a sleeping mat. This lack of an actual injury is a fatal flaw in a constitutional confinement claim. *Adams v. Lumpkin*, No. 6:22CV177, 2022 WL 2336082, at *3 (E.D. Tex. May 10, 2022), *report and recommendation adopted*, No. 6:22-CV-177-JDK-KNM, 2022 WL 2328735 (E.D. Tex. June 28, 2022) (confinement unclothed for less than half a day and verbal harassment while walking through hall in underwear); *James v. LeBlanc*, No. 09-CV-1592, 2011 WL 6842516, at *6–7 (W.D. La. Nov. 16, 2011), *report and recommendation adopted*, No. 09-CV-1592, 2011 WL 6842512 (W.D. La. Dec. 29, 2011) (uncomfortable confinement in paper gown for day); *Bender v. Brumley*, 1 F.3d 271, 274

n.4 (5th Cir. 1993); *Burton v. Cameron Cnty., Tex.,* 884 F. Supp. 234, 240–41 (S.D. Tex. 1995) (sanitation issues and verbal harassment not constitutional violations).

The types of complaints lodged by Plaintiff are not constitutional injuries. For example, exposure to urine that escaped the toilet for a limited time period is not a constitutional violation, *see Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir.1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from an overflowed toilet in his cell), and denial of a shower for a short period of time also does not rise to the level of a constitutional violation, *see Shakka v. Smith,* 71 F.3d 162, 167–68 (4th Cir.1995) (no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him). Lacking any constitutional injury, Plaintiff's complaints regarding conditions of confinement must be dismissed. Even were that not the case, Plaintiff has failed to provide evidence Sheriff Jones acted in an objectively unreasonable manner. The claims must be dismissed.

### 2.      Inmate Classification

Plaintiff alleges that he was placed into segregation classification after (1) leaving his assigned cell/unit (per Plaintiff due to "inmates being malicious and threatening me", *Complaint* [1] ¶ 9), and (2) location of contraband in his cell/bed. *Id.* However, Plaintiff was placed in each of these detention locations based upon legitimate governmental objectives related to safety and security.

Inmates have no recognizable due process interest in custodial classifications. *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir.1999) (citing *Whitley v. Hunt,* 158 F.3d 882, 889

(5th Cir.1998). Notably, the classification of inmates is an administrative function of the prison. *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1982), *overruled on other grounds Int'l. Woodworkers of America v. Chamion Intern. Corp.* 790 F.2d 1174 (5th Cir. 1994). Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell*, 441 U.S. at 547-48. Absent a showing of an expressed intent to punish on the part of detention facility officials, the determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Ryan v. Arledge*, No. 1:16CV158-MPM-JMV, 2017 WL 1194228, at *1 (N.D. Miss. Mar. 30, 2017) citing *Kennedy v. Mendoza-Martinez*, 372 U.S., at 168-169; *Flemming v. Nestor*, 363 U.S., at 617. Thus, if a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Bell*, 441 U.S. at 538–39.

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell v. Wolfish*, 441 U.S. 520, 540, 99 S. Ct. 1861, 1874–75, 60 L. Ed. 2d 447 (1979). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546. The effective management of a detention facility is a valid objective that can

justify imposition of conditions and restrictions of pre-trial detention and dispel any inference that such restrictions are intended as punishment. *Id.* at 540.

In addition, Plaintiff failed to provide evidence of a discernible harm due to the detention locations about which he complains, and thus fails to show a constitutional violation. *Hmeid v. Nelson Coleman Corr. Ctr.*, No. CV 18-3449, 2018 WL 4922381, at *18–19 (E.D. La. Aug. 15, 2018), *report and recommendation adopted*, No. CV 18-3449, 2018 WL 4909898 (E.D. La. Oct. 10, 2018). Moreover, "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *Pichardo v. Kinker*, 73 F3d 612, 612 (5th Cir. 1996). In sum, Plaintiff fails to demonstrate an underlying constitutional violation and further fails to demonstrate Sheriff Jones acted in an objectively unreasonable manner. Plaintiff's classification claims must be dismissed.

### 3.    **Denial of Medical Care**.

Plaintiff alleges he was denied medical care after he was Tased. Ex. A, *Omnibus Hearing Transcript* 23:9-23. To demonstrate a claim for inadequate medical care, Plaintiff must establish officers acted with deliberate indifference to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). An officer acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer,* 511 U.S. at 837.

The Fifth Circuit has further explained that unsuccessful medical treatment, acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). Simply put, the Plaintiff must demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Jail records reflect that Plaintiff was escorted to medical and cleared after being Tased. Ex. B, *Incident Report,* (CLT-(BATTLE)-000200)). Plaintiff was provided medical attention, *id.*, and the burns from the Taser healed fully without requiring any treatment. Ex. A, *Omnibus Hearing Transcript* 24:7-25:11. Movants were not deliberately indifferent to Plaintiff's medical needs, serious or otherwise. Rather, Plaintiff merely disagrees with the treatment he received, which is not sufficient to state a claim for deliberant indifference. Therefore, this claim must be dismissed.

### 4.    <u>Deprivation of Property</u>

Plaintiff alleges that Defendants Tyler and Nelson removed property from his cell and he did not get it back. Ex. A, *Omnibus Hearing Transcript* 20:10 – 21:3. However, Plaintiff conceded that he has no reason to believe that the defendants he saw take his property were the same individuals responsible for not returning the property. Ex. A, *Omnibus Hearing Transcript* 20:13-24; 34:19-24. The Supreme Court has held:

> an unauthorized intentional deprivation of property by a state
> employee does not constitute a violation of the procedural
> requirements of the Due Process Clause of the Fourteenth
> Amendment if a meaningful post deprivation remedy for the loss is
> available. For intentional, as for negligent deprivations of property
> by state employees, the state's action is not complete until and unless
> it provides or refuses to provide a suitable post deprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204, 82 L. Ed. 2d 393 (1984). The grievance procedure at the Jail is a meaningful post-deprivation remedy for loss of property, as is a state law tort action. *See*, *Brooks v. George County, Mississippi*, 84 F.3d 157, 165 (5th Cir. 1996)(The *Parratt/Hudson* doctrine dictates that a state actor's *random and unauthorized deprivation* of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy.). Because Plaintiff failed to pursue this remedy, his claims as to lost property must be dismissed.

**5.** **Bystander Liability**

Plaintiff's claims against Defendant Milton are essentially that he talked to her and she did not help him. Ex. A, *Omnibus Hearing Transcript* 27:1-13. He thought that she would help get him out of lockdown. *Id*. at 26:22-28:7. He claims he told her he had burn marks on his chest. *Response* [14] p. 1. These facts fail to state a claim for bystander liability. The Fifth Circuit has held "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir.1995); *see also Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013*); Richie v. Wharton County Sheriff Dep't Star Team*, 2013 WL 616962, *2 (5th Cir. Feb.19, 2013).

To prevail under a theory of this "bystander liability", a plaintiff must show that the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *See Whitley*, 726 F.3d at 646. Per Plaintiff's own narrative, Defendant Milton was not present when Plaintiff was tased. Ex. A, *Omnibus Hearing Transcript* 26:22-28:7.  As discussed herein *passim*, Plaintiff did not suffer any constitutional injuries. For these reasons Defendant Milton's failure to have Plaintiff immediately relocated or seen again by medical do not give rise to constitutional claims, and Plaintiff's claims against Milton must be dismissed. There simply was no substantial risk to Plaintiff's safety requiring Defendant Milton's response and Milton acted in an objectively reasonable manner. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

**6.    Excessive Force**

Plaintiff sued Defendant Scott for deploying his Taser on him, which he considers to be excessive force. Ex. A, *Omnibus Hearing Transcript* 22:13-23:8. To sufficiently state an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). A pretrial detainee can prevail only if he or she shows that the defendant applied force in a manner that was not rationally related to a legitimate nonpunitive governmental purpose, or that the actions were excessive in relation to that purpose. *Id.* at 398.

Objective reasonableness, for purposes of the *Kingsley* analysis, turns on the facts and circumstances of each particular case. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The

reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Kingsley*, 576 U.S. at 399. In determining the objective reasonableness of an officer's use of force, courts consider at least the following non-exclusive factors, enumerated in *Kingsley*: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397. Assessments of the reasonableness of force must be made from the perspective of a jailer who is often forced to make split-second decisions in tense situations. *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 363 (5th Cir. 2022) (citing *Kingsley*, 576 U.S. at 399). The use of excessive force will be actionable only where it was an intentional and knowing act, and officers will enjoy qualified immunity unless the use of excessive force violates a clearly established right. *Kingsley*, 135 S. Ct. at 2474. Plaintiff cannot cite to any record evidence which shows such a violation.

Instead, Defendant Scott is entitled to summary judgment on the basis of qualified immunity because the evidence conclusively shows that his actions did not amount to a constitutional violation and did not violate clearly established law. Plaintiff concedes he failed to follow Defendant Scott's instructions. Ex. A, *Omnibus Hearing Transcript* 12:22-13:4 (despite order to turn around and put hands behind his back, Plaintiff continued backing up); 13:9-12 (continued backing up and talking rather than turning around and

putting hands behind back); 14:6-11 (did not roll over as instructed until tased again). Jail records also reflect that Plaintiff appeared to be "high on something" during his noncompliance while fleeing from his cell and unit. Ex. B, *Incident Report* (CLT-(BATTLE)-000200)). In light of these admissions, Defendant Scott's use of force was objectively reasonable and related to a legitimate, nonpunitive purpose – obtaining compliance from Plaintiff to establish jail security.

The amount of force utilized by Scott was not disproportional to the need for force. In addition, the remaining *Kingsley* factors further weigh against Plaintiff. As mentioned *supra*, wounds from a Taser are *de minimis* injuries. S*ee Buckley v. Haddock*, 292 F. App'x 791, 795–96 (11th Cir. 2008) (holding sixteen small taser burns incurred while securing plaintiff, causing "some scarring and keloid growth," not sufficient to state a constitutional claim for excessive force.) Further, Plaintiff's testimony highlights his active resistance and failure to comply with Scott's directions in a custodial setting. See, *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020) ("So when a prison inmate engages in willful misconduct, a prison guard may use reasonable force to restrain him . . .).

Based on the record facts and testimony by the Plaintiff and his Complaint, the Plaintiff has failed to demonstrate any constitutional violations on the part of Defendant-Movants Jones, Tyler, Scott and Milton. Therefore, the qualified immunity of each of the Movants remains intact and Plaintiff's claims against each must be dismissed.

### C.    *Monell* **as to any Official Capacity Claim(s)**

The Court *sua sponte* dismissed Plaintiff's claims against Hinds County Detention Center. *Order* [16]. Plaintiff did not specify whether his claims against Defendants Jones,

Tyler, Scott or Milton were in their official or individual capacities. Where capacity is not specified by the plaintiff, "[t]o determine whether a defendant is being sued in his or her official or individual capacity, we examine '[t]he allegations in the complaint,' … and '[t]he course of proceedings,' *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985))." *Robinson v. Hunt Cnty., Texas*, 921 F.3d 440, 446 (5th Cir. 2019) (citation omitted). It would be appropriate for the Court to conclude that Plaintiff's claims are each individual capacity claims based upon Plaintiff's failure to allege *Monell* elements as to any of the Defendants. *See Bigham v. Lubbock Cnty. Jail*, No. 5:23-CV-089-BR, 2024 WL 6062858, at *1–2 (N.D. Tex. Jan. 9, 2024). However, this lack of necessary allegations is also the basis for Movants' motion to dismiss any official capacity claims.

Importantly, any official capacity claims that Plaintiff might be making are merely claims against the County itself, for which Movants cannot be personally liable. *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Under the principles of *Monell*, to establish liability to the County or individuals in their official capacities, Plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Independent School Dist.*, 349 F.3d at 244, 247 (5th Cir. 2003). "Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an

official with final policymaking authority." *Thomas v. Prevou*, No. 1:05-cv-707-KS-MTP, 2008 WL 111293, *3 (S.D. Miss. 2008) (citing *Monell*, 436 U.S. at 694; *and Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006)). With regard to any official capacity claims against Movants, Plaintiff has failed to allege or establish record evidence that a policy, practice, or custom was the moving force behind any alleged violation of his civil rights. Thus, any official capacity claims against Movants fail and must be dismissed.

## CONCLUSION

For the reasons stated hereinabove, as well as in Movants' Motion for Summary Judgment, Movants respectfully move that this Court grant them a favorable summary judgment, dismissing Plaintiff's claims with prejudice, and granting all other such relief that this Court would find appropriate.

**DATE:**       **October 1, 2025.**

Respectfully submitted,

**TYREE JONES, NELSON TYLER, JOHN SCOTT, AND BRITTANY MILTON**

BY:     */s/ Kevin J. White*
                One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
KEVIN J. WHITE (MSB #101619)
WILLIAM D. BOYD MSB #106220)
Butler Snow, LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
Tel: 601-948-5711
Email:  will.allen@butlersnow.com
Email:  kevin.j.white@butlersnow.com
Email:  will.boyd@butlersnow.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, of Butler Snow, LLP, one of the attorneys for Defendants hereby certify that on this day, I electronically filed the foregoing Memorandum of Authority supporting Motion for Summary Judgment with the Clerk of the Court using the ECF system, which gave notification of the same to:

> Charles E. Cowan, Esq.
> Wise, Carter, Child & Caraway, PA
> P. O. Box 651
> Jackson, MS 39201
> cec@wisecarter.com

> Charles W. Kihm, Esq.
> Wise, Carter, Child & Caraway, PA
> P. O. Box 651
> Jackson, MS 39201
> cwk@wisecarter.com
> *Attorneys for Defendant Officer James Dotson*

and delivered a true and actual copy via U.S. Mail to:

> Paul DeAnthony Battle
> 205 Colonial Drive
> Jackson, MS 39204
> *Pro Se Plaintiff*

This the 1st day of October, 2025.

> */s/ Kevin J. White*
> OF COUNSEL

97704990.v3