UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PAUL DEANTHONY BATTLE                                                    PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 3:24cv168-MTP

TYREE JONES, JOHN DOES, NELSON
TYLER, JOHN SCOTT, TERRELL
THORNTON, and BRITTANY MILTON                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

BEFORE THE COURT is Defendants Tyree Jones, Nelson Tyler, John Scott, and

Brittany Milton's Motion for Summary Judgment [73]. *Pro se* Plaintiff Paul Deanthony Battle is

a former pretrial detainee of the Hinds County Detention Center, and he challenges his prior

conditions of confinement. The Court having considered the Movants' submissions, the record,

and the relevant legal authority, finds that the motion should be granted and this case dismissed

without prejudice.[1]

BACKGROUND

When Battle initiated this action on March 25, 2024, he was a pretrial detainee, held at

the Tallahatchie County Correctional Facility on behalf of Hinds County. (Resp. [48]). He was

transferred there from the Hinds County Detention Center in Raymond, Mississippi. His Hinds

County booking and jacket numbers were used as his identification numbers for the Tallahatchie

County Correctional Facility. (Jones's Mot. Summ. J. Ex. D [73-4] at 1); (Resp. [48]); (Ltr.

[36]); (Envelope [1-2] at 1). The remaining Defendants are Hinds County Sheriff Tyree Jones,

---

[1] The case was reassigned, upon consent, to the undersigned on June 27, 2025. [55].

Lieutenant Nelson Tyler, and Officers John Scott, Terrell Thornton, and Brittany Milton. Battle asserts claims arising from his pretrial detention at the Hinds County Detention Center.

On October 24, 2023, while still at the Hinds County Detention Center, Battle claims he left his housing unit without permission out of fear for his safety. Subsequently, he contends he came across Officer Scott, who tased him three successive times in the chest, unnecessarily. The third time allegedly caused Battle to urinate on himself. He contends Scott then had him put in a lock-down cell.

On October 25, 2023, the day after he was first put in lockdown, Battle testified, "And I was telling them I needed to see a nurse or something like that, because I had burn marks on my chest from the Taser." (Omnibus Tr. [59] at 14-15). Battle further testified that Officer Milton stopped by his cell, and:

> ... I had to talk to her under the door, because I was in lockdown.
>
> So I was yelling through the door telling her everything that happened and how I got Tased. ... I was thinking she would help me. ... Just she was the first one to come through a few days later, and I still received no help.

*Id.* at 27. He claims he expected her to either get him out of lock-down, allow him his one hour recreation time, "or just anything to try to help my situation." *Id.*

Battle was allegedly locked down for a total of 30 days. He claims that, for the first 15 days, he was locked down 24 hours a day, with no shower or medical attention for Taser burns on his chest. For the last 15 days of lock-down, however, he contends he was let out of the cell each day for an hour and a shower.

Battle returned to general population on November 23, 2023. On approximately November 30, however, he alleges Lieutenant Tyler searched his regular cell and found a cellular phone. As a result, Battle claims Tyler wrongfully accused him and ordered Officer Thornton to

place Battle back in lock-down. Tyler allegedly did not question or punish Battle's cellmate. Tyler purportedly packed up Battle's property and commissary items, but he did not get them back.

Officer Thornton allegedly placed Battle in a lock-down cell that had feces rubbed on the wall and blood on the floor and toilet. The first night he says he had to sleep on the floor and, afterwards, on a mat. He testified he was in the cell for about a week.

At some point between December 7, 2023 and March 20, 2024, he was transferred to the Tallahatchie County Correctional Facility. He was released on bond on April 4, 2025. (Jones's Mot. Summ. J. Ex. D [73-4] at 35).

Battle filed his Complaint under 42 U.S.C. § 1983. He asserts claims for violations of detainees' basic human needs and procedural due process under the Fourteenth Amendment. This includes an excessive force claim against Officer Scott, a possible denial of medical treatment claim against Officer Milton, lock-down claims against Officer Milton, Lieutenant Tyler and Officer Thornton, and deprivation of property against Tyler. Plaintiff brings all claims against Sheriff Jones, because he is in charge of the jail. Battle seeks compensatory damages.

Sheriff Jones, Lieutenant Tyler, and Officers Scott and Milton have now moved for summary judgment arguing (1) there was no significant physical injury, (2) Jones did not cause the alleged violations, (3) they are entitled to qualified immunity, (4) the claims were unexhausted, and (5) there is no *Monell* liability. Battle has not responded and the time for doing so has passed.

## DISCUSSION

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

3

law." Fed. R. Civ. P. 56(a).  To make this determination, the Court must view the evidence in the light most favorable to the non-moving party.  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005).  A "material fact" is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*  The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986).  The Court considers evidentiary materials cited by the parties and may also "consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).

Movants argue that all claims are unexhausted.  According to the Prison Litigation Reform Act, "No action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In other words, a prisoner is required to exhaust available remedies with the prison prior to filing such a suit.  *Dillon v. Rogers*, 596 F.3d 260, 265 (5th Cir. 2010).  Since non-exhaustion is an affirmative defense, Defendants bear the burden of proving Plaintiff failed to exhaust.  *Id.* at 266.  Therefore, Defendants "must establish beyond all peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor."  *Id.*  On the other hand, proving that exhaustion is futile or personally unavailable to Plaintiff is his burden.  *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994).  Whether a prisoner has first exhausted his administrative remedies is a mixed question of law and fact. *Dillon*, 596 F.3d at 266.

4

"To determine what remedies are 'available' . . . we look to 'the applicable procedural rules . . . defined . . . by the prison grievance process itself.'" *Huskey v. Jones*, 45 F.4th 827, 831 (5th Cir. 2022) (quoting *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015)). Remedies are available so long as they are "'capable of use' to obtain 'some relief for the action complained of.'" *Huskey*, 45 F.4th at 831 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). A prisoner's grievance needs only be specific enough to give prison officials a "fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).

As a general matter, where prison officials prevent a prisoner's efforts to avail himself of an administrative remedy, they can render that remedy unavailable. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Where physical injury or prison officials prevent a prisoner from filing a grievance, he must file it once the impediment is removed. *See, Dillon*, 596 F.3d at 267-68; *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003) (plaintiff "sufficiently alleged . . . he exhausted the administrative remedies that were personally available to him" where his physical injury prevented timely grievance and he later filed an untimely grievance); *Parker v. Adjetey*, 89 F. App'x 886, 887-88 (5th Cir. Feb. 20, 2004) (held unexhausted where prisoner did not file untimely grievance after coma prevented timely grievance); *Shorter v. Pace*, 3:21cv672 (S.D. Miss. Jan. 18, 2023) (R&R) (held unexhausted because, once plaintiff transferred to another prison, he still did not file a grievance nor allege any impediments at the new prison) *adopted* Feb. 14, 2023; *Crawford v. Dretke*, C-04-335 (S.D. Tex. Jan. 11, 2007) (held exhausted where officials prevented timely filing and plaintiff submitted untimely grievance once transferred to new prison) (R&R) *adopted* Mar. 12, 2007; *Washington v. Tex. Dep't of Cr. J.*, C-05-11 (S.D. Tex. Nov. 5, 2006) (held unexhausted where prisoner did not attempt to file a grievance once he

5

was physically able to do so). So, for example, "[i]f impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-68.

Movants assert that a grievance procedure was in place during Battle's detention. In support, Movants present evidence that, on August 25, 2023, he was given a copy of the Hinds County Detention Facility's grievance "Rules/Instructions" and Inmate Handbook, both of which detailed the jail's grievance process to resolve inmate complaints. (Jones's Mot. Summ. J. Ex. C [73-3] at 1-2); (Jimikia Scott Aff. [73-5] at 1, 3, 19-21). Generally, the inmate will fill out an Inmate Grievance Form, and deposit it with the grievance officer. (Jones's Mot. Summ. J. Ex. C [73-3] at 2); (Jimikia Scott Aff. [73-5] at 19). The grievance officer will then deliver the grievance to the appropriate party for response. (Jones's Mot. Summ. J. Ex. C [73-3] at 2); (Jimikia Scott Aff. [73-5] at 19). If the inmate is unsatisfied with the response, there are subsequent procedures in place for written administrative appeals. (Jones's Mot. Summ. J. Ex. C [73-3] at 2); (Jimikia Scott Aff. [73-5] at 21).

It is undisputed that Battle filed no written grievances. In his sworn Complaint, he alleges that he "was not allowed to present a grievance at the Hinds County Ra[y]mon[d] Detention Center. They prevented it by throwing me in the [h]ole. . . ." (Compl. [1] at 3). Battle claims he "ask[ed] for medical visits for to place a grievance but never received or was allowed one." *Id.* He further states, "I had no opportunity unti[l] now to respond. There is no grievance procedure at that jail and on that day [of the tasing] they use scare tactics." *Id.* at 4.

When he filed the Complaint, Battle was at the Tallahatchie County Correctional Facility, being held for Hinds County. So, while he claims he had no opportunity to file a grievance until

6

he came to the Tallahatchie jail, he does not explain why he did not do so once he was there. Viewed in the light most favorable to Battle, the evidence shows that once any alleged impediment to filing a grievance ceased,[2] he chose to file this Complaint, rather than attempt to exhaust his administrative remedies. This is insufficient to demonstrate that the Hinds County grievance process was personally unavailable to him.

Without a genuine issue of material fact on this point, Battle's claims against Movants must be dismissed without prejudice. *See*, 42 U.S.C. § 1997e(a); *Dillon*, 596 F.3d at 265 (holding prisoner must exhaust his administrative remedies prior to filing a § 1983 suit).

This leaves the claim asserted against Officer Thornton, the non-moving Defendant. Since none of the claims in the Complaint were exhausted, summary judgment will likewise be granted to the nonmovant. *See*, *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding that summary judgment inured to the benefit of defaulting defendants "where a defending party establishes that plaintiff has no cause of action"); *Howard v. Epps*, 5:12cv61, 2013 U.S. Dist. LEXIS 75194 at *10-11 (S.D. Miss. Apr. 22, 2013) (summary judgment on failure to exhaust inured to benefit of nonmoving defendants) (Report & Recommendation) *adopted*, May 29, 2013.[3]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated above, Defendants Tyree Jones, Nelson Tyler, John Scott, and Brittany Milton's Motion for Summary Judgment [73] is **GRANTED**. The remainder of this case is **DISMISSED**

---

[2] For purposes of this opinion, the Court assumes without deciding that there were impediments that prevented Plaintiff from filing a grievance, although the claimed impediments appear dubious.
[3] It should also be noted that Thornton is not before the Court, because he was never served with process. Efforts to serve him with process at the address provided were unsuccessful, and Plaintiff has not provided a current address or other information to allow for service. *See, e.g.*, Orders [47, 70] and Resp. [48, 49].

**WITHOUT PREJUDICE** for failure to exhaust administrative remedies.  A final judgment will issue pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED AND ADJUDGED, this the 2⁸ᵗʰ day of April , 2026.

s/ _____
UNITED STATES MAGISTRATE JUDGE